## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON

**FREDERICO HATCHER,**

      **Plaintiff**

**v.**                                    **Case No. 2:17-cv-02054**

**JIM RUBENSTEIN, Commissioner,**
**C.J. RIDER, Religious Services Director,[1]**
**DAVID BALLARD, Warden, Mount Olive Correctional Complex,**

      **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court is the Motion to Dismiss filed by defendant C.J. Rider (ECF No. 19), in which defendants Jim Rubenstein and David Ballard join (ECF Nos. 30 and 35).[2]

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The plaintiff is an inmate at the Mount Olive Correctional Complex ("MOCC"), who appears to be serving a life sentence following his conviction in the Circuit Court of Cabell County for first degree murder and first degree robbery or attempted robbery. He claims

---

[1] According to his motion documents, the proper spelling of this defendant's last name is "Rider." The Clerk is directed to modify the docket sheet accordingly.

[2] To the extent that the Notices of Joinder filed by defendants Rubenstein and Ballard (ECF Nos. 30 and 35) have been docketed as motions, it is hereby **ORDERED** that such motions are **GRANTED**, to the extent that the court will treat defendant Rider's Motion to Dismiss and Memorandum of Law in support thereof as though they were also filed by defendants Rubenstein and Ballard.

that, while incarcerated at MOCC in 2000, he converted to Islam and that his ability to practice his religion has been restricted by West Virginia Division of Corrections ("WVDOC") policies concerning religious diet and the ability to wear a kufi throughout the prison.

Specifically, the plaintiff alleges that, as a cost-saving measure, in May of 2014, the WVDOC amended Policy Directive 511.00, entitled "Religious Special Diet," to provide one universal non-meat (vegetarian/vegan) diet to all inmates who request a religious special diet. The Complaint further alleges that "Defendants refuse to provide Mr. Hatcher with a Halal meat diet or even provide a non-pork meat substitute on the days pork is served because he is Muslim yet give official sanction or sponsorship to the Hare Krishna religion and their strict Brahman diet." (ECF No. 2 at 10).

The plaintiff further contends that, because the exchange does not sell Halal meats and offers very few Halal prepackaged meals, "it is not realistically possible to supplement a Muslim's dietary requirements through the exchange . . . ." (*Id.* at 11). The Complaint further alleges that the food included in the Religious Special Diet is prepared in accordance with the strict dietary practices of the Hare Krishna, and, on occasion, is blessed by a Rabbi, which makes it "Haram" (forbidden) because it is food "invoked" in a name other than Allah, which purportedly violates the Qu'ran. (*Id.* at 12). Thus, the Complaint alleges that:

> Clarence J. Rider and Jim Rubenstein arbitrarily did away with the non-pork dietary practices for the Muslims in MOCC after being in place without incident for many years. Mr. Rider and Mr. Rubenstein have imposed a substantial burden on Mr. Hatcher's religious practice by denying him a Halal meat diet. The least restrictive means is as it always has been prior to the implementation of P.D. 511: serve Mr. Hatcher and other eligible Muslims a non-pork diet including meat and provide said meals utilizing separate cooking, serving, and eating utensils to avoid cross contamination of foods.

(*Id.* at 12-13).  The plaintiff further contends that providing a non-pork, meat alternative to Muslim prisoners is the least-restrictive alternative to the solely vegetarian diet, because inmates who are medically restricted from eating fish or poultry are provided with a meat substitute, if requested.  (*Id.* at 10).  Thus, the non-pork meat substitute is already available at the prison.[3]

The Complaint further alleges that the plaintiff requested permission to wear his kufi (a brimless, round cap commonly worn by Muslims) at all times, because his religious beliefs require him to wear the kufi at all times and doing so has been allowed "for many years without incident."  (*Id.* at 14 and Ex. 10).  However, then-Warden David Ballard responded to a grievance (16-MOCC-ST-129) filed by the plaintiff, stating "You may wear your kufi only in your cell and during religious services.  Wearing at any other times is prohibited."  (*Id.*)  The Complaint further indicates that then-Commissioner Jim Rubenstein rejected the appeal of this grievance because it did not comply with the policy requirement of only submitting one grievance per envelope.  (*Id.*)  The plaintiff contends that he resubmitted his grievance (No. 16-MOCC-PA-127), which was again denied by Warden Ballard, but then he received no response from Commissioner Rubenstein.  (*Id.* at 14-15 and Ex. 11).  The plaintiff further alleges that he subsequently wrote letters to Warden Ballard and the Commissioner stating that he did not receive a reply from the Commissioner and that he considered his grievance to be exhausted.  (*Id.* at 16 and Ex. 12-14).

---

[3] The undersigned notes, however, that the plaintiff has not alleged that the non-pork meat alternative has been ritually slaughtered and would otherwise satisfy the Halal restrictions of the Muslim religion.

The plaintiff's Complaint asserts that the actions of all of the defendants in denying him a religiously-mandated Halal meat diet, including proper food during Ramadan, and the actions of defendants Ballard and Rubenstein in not permitting him to wear his kufi at all times throughout the facility, violate the Free Exercise Clause of the First Amendment to the United States Constitution, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq.* (ECF No. 2 at 17). Additionally, the plaintiff claims that the defendants' actions in "intentionally giving official sanction and sponsorship to the 'Brahman Diet' and the Hare Krishna religion, while intentionally and without justification denying Plaintiff a religiously mandated Halal meat diet" violates the Establishment Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. (*Id.* at 18).

The plaintiff seeks declaratory and injunctive relief in the form of: (1) providing him a Halal meat diet consistent with his religious scruples, including during the Holy Month of Ramadan; (2) arranging for the opportunity to purchase Halal meat and other Halal food items at his own expense from a Halal foods vendor; and (3) authorizing him to wear his kufi at all times throughout the facility consistent with security requirements and the orderly operation of the facility. (*Id.* at 19). He further seeks monetary damages from the defendants in their individual capacities for the alleged violation of his First Amendment and Fourteenth Amendment rights.[4]

---

[4] Because the plaintiff has made it clear through his filings that he is not suing the defendants in their official capacities for monetary damages or seeking any monetary damages under RLUIPA, the undersigned finds it unnecessary to address the arguments made by defendants Rider and Rubenstein that they are entitled to Eleventh Amendment immunity in their official capacities and that monetary damages are unavailable under RLUIPA. The undersigned will only address whether the plaintiff is entitled to injunctive relief under RLUIPA, injunctive relief from the defendants in their official capacities under section 1983, and monetary damages from the defendants in their individual capacities under section 1983 for the various constitutional violations alleged. (*See* ECF No. 20 at 4-6; ECF No. 21 at 3-4).

On December 15, 2017, defendant Rider filed a Motion to Dismiss (ECF No. 19), in which defendants Rubenstein and Ballard subsequently joined (ECF Nos. 30 and 35), which asserts various grounds for dismissal of the Complaint which will be specifically addressed in the Analysis section, *infra*. The Motion to Dismiss has been fully briefed and this matter is ripe for adjudication.

## STANDARD OF REVIEW

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints. However, in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556.

* * *

5

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

## ANALYSIS

### A. The plaintiff has not demonstrated a substantial burden on the exercise of his religious beliefs.

Defendant Rider's Motion to Dismiss, in which defendants Rubenstein and Ballard join, asserts that the plaintiff cannot meet his initial burden to prove that the policies in question "substantially burden" the exercise of his religion and, thus, the defendants assert that the plaintiff's Complaint fails to state a plausible claim under either RLUIPA or the First Amendment Free Exercise Clause.

Section 3 of RLUIPA governs restrictions on religious exercise by institutionalized individuals by state or local governments. RLUIPA provides as follows:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person − (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). The Act defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). A substantial burden "'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs,' or . . . forces a person to 'choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one

6

hand, and abandoning one of the precepts of her religion . . . on the other hand.'" *Smith v. Ozmint*, 578 F.3d 246, 251 (4th Cir. 2009) (quoting *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006)).  Again quoting from *Lovelace*, the *Smith* decision noted that courts may "not judge the significance of the particular belief or practice in question." *Lovelace,* 472 F.3d at 187 n.2. *Id.*

The plaintiff bears the initial burden of proving that the defendants' actions substantially burden his sincere religious exercise. *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015).  If the plaintiff meets this burden, then the government must demonstrate that such substantial burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering such interest. *Liberty Univ., Inc. v. Lew*, 733 F.3d 72, 99-100 (4th Cir. 2013); *see also Goodall by Goodall v. Stafford Cnty. Sch. Bd.*, 60 F.3d 168, 171 (4th Cir. 1995) ("[I]f the plaintiff cannot show that their exercise of religion is substantially burdened by the [government's] policy, the [government] is not required to come forward with proof of its interest.")

Under the Free Exercise Clause of the First Amendment to the United States Constitution, made applicable to the states under the Fourteenth Amendment, a prisoner's right to practice his or her religion may only be restricted upon the showing that such restriction is reasonably related to a legitimate penological interest. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987); *Turner v. Safley*, 482 U.S. 78, 84 (1987).  "This approach ensures the ability of corrections officers 'to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration' [citation omitted] and avoids unnecessary intrusion of the judiciary into problems particularly ill-suited to 'resolution by decree.'" *O'Lone*, 482 at 349-350 (quoting *Procunier v. Martinez*, 416 U.S. 396, 405 (1974)).  Thus, federal courts are counseled to exercise judicial restraint

in matters of prison administration. *Turner*, 482 U.S. at 89. Accordingly, a First Amendment claim turns on the reasonableness of the restriction and allows the court to consider whether there are ready alternatives to accommodate the prisoner's religious rights. *Id.* at 90-91. Because the standard under RLUIPA is more stringent than that under the First Amendment, the undersigned will address the plaintiff's RLUIPA claims first.

### 1.    *The plaintiff's religious diet claims.*

RLUIPA claim

The defendants assert that the plaintiff herein cannot meet his burden to show that the policies at issue put a substantial burden on his religious exercise because the religious diet offered to all inmates is a meat-free diet that is acceptable under Islamic law. (ECF No. 20 at 7) (citing *Turner-Bey v. Maryland*, No. JFM-10-2816, 2012 WL 4327282, at *8 (D. Md. Sept. 18, 2012). Similar to the instant case, in *Turner-Bey*, the court considered whether a vegetarian diet in lieu of a Halal diet that included ritually slaughtered meats was a substantial burden on the Muslim plaintiff's religious exercise.

The Maryland court determined that the failure to provide a specific Halal diet containing meat other than pork did not substantially burden the plaintiff's religious exercise because a Muslim is not religiously obligated to eat Halal meat; rather, Islam simply prohibits eating meat that is not Halal. *Turner-Bey*, 2012 WL 4327282, at *8. Thus, the court concluded that Muslim inmates are "not asked to choose between violating a religious precept or depriving [themselves] of adequate nutrition; an alternative meat-free diet is available that is acceptable under Islamic law." *Id.* The defendants' Memorandum of Law asserts:

Similarly, here, Plaintiff was provided with a "meat-free diet" that is "acceptable under Islamic law." *Id.* Plaintiff asserts that WVDOC Policy Directive 511.00 was amended and removed the non-pork meat substitute option for Muslims. *See Compl.* at pp. 10. However, WVDOC Policy Directive 511.00 actually creates one Religious Special Diet that meets the dietary restrictions of all religions. The diet does not contain any meat products. Plaintiff's allegations that the failure to provide a substitute for pork with respect to the regular diet is in violation of RLUIPA is not supported by the law, because Defendants did not require him to eat foods "forbidden by his religion." *See Boyd v. Lehman*, No. C05-0020-JLR, 2006 U.S. LEXIS 94223, 2006 WL 1442201, at *10 (W.D. Wash. May 19, 2006) (finding no substantial burden on exercise of religious beliefs because "[t]he ovo-lacto vegetarian diet which is provided to plaintiff does not require him to eat foods which are forbidden by his religion, it simply denies him one component of the diet which he contends should be provided.")

(ECF No. 20 at 8). Accordingly, the defendants contend that the plaintiff does not have an "unfettered right" to the religious accommodation of his choice and has not proven a "substantial burden" on the exercise of his religion. (*Id.* at 9).

In his Response, the plaintiff attempts to distinguish his case from the litany of federal cases that have found, similar to *Turner-Bey*, that the failure to provide Muslim inmates with a diet that includes Halal meat does not pose a substantial burden on the exercise of their religion. *See, e.g., Robinson v. Jackson*, 615 F. App'x 310 (6th Cir. June 15, 2015); *Hudson v. Caruso*, 748 F. Supp.2d 721, 729-30 (W.D. Mich. 2010); *Wells-Bey v. Kopp*, No. ELH-12-2319, 2013 WL 1700927 (D. Md. Apr. 16, 2013); *Cloyd v. Dulin*, No. 3:12-CV-1088, 2012 WL 5995234, at *4 (M.D. Tenn. Nov. 30, 2012). The plaintiff's Response asserts:

However, this case goes beyond the argument of meat versus vegetarian diet and distinguishes itself from the cases cited by defendant Rider. As clearly alleged by Mr. Hatcher, in his Complaint, ever since MOCC opened on or about 1995, Muslim inmates were provided a non-pork meat diet served on color coded trays, cups and eating utensils. On or about May 2014 Muslim inmates were informed that the non-pork diet program would no longer exist and on or about June 2015 Clarence J. Rider, Religious Services Director for WVDOC personally informed the Muslims in MOCC that both

he and the Commissioner chose to adopt a one-size-fits-all religious diet because it is "cost-effective." (See Complaint, pg. 9).

Defendant Rider has presented no evidence that the Brahman diet of the Hare Krishna community and the diet members of the Brahman caste are expected to adhere to in India and elsewhere can also be considered both Kosher and Halal. Mr. Hatcher's religious practice and beliefs includes the regular consumption of Halal flesh, or at a minimum, the consumption of animal flesh and other foods free of contact or contamination with pork.

The defendants in this case do provide meat alternatives to those inmates who cannot eat fish or poultry without difficulty. Muslims have the option of attempting to maneuver through the pork and mines of the regular diet program or submit to the strict dietary requirements of the Hare Krishna and the Hindu people. Either option is a violation of the Free Exercise Clause and RLUIPA due to the fact that the regular diet regularly contain[s] pork items and the Brahman diet is offensive to Muslims because the food is blessed in the name of the Hare Krishna gods and the cooking and service utensils are blessed by a Rabbi. This makes the food haram (forbidden) (See Complaint pg. 12).

(ECF No. 21 at 5-6). The plaintiff further contends:

The defendant has not presented any evidence that a Brahman diet is also Halal nor has he presented any evidence that denying the few Muslims in MOCC a Halal meat diet or even a meat substitute on days pork is served is the least restrictive means under RLUIPA.

(*Id.* at 6-7).

The defendants' Reply brief reiterates that other courts that have considered the issue have determined that a Muslim may "eat an exclusively vegetarian diet without violating his religion." (ECF No. 22 at 3) (citing *Abdul-Malik v. Goord*, No. 96 CIV 1021 (DLC), 1997 U.S. Dist. LEXIS 2047, 1997 WL 83402, at *6-7 (S.D.N.Y. Feb. 27, 1997). The Reply further states:

Not being offered a specific food item, such as halal meat, is not enough to meet the burden necessary for a successful RLUIPA claim. *See Pratt v. Corrections Corp. of Am.*, 267 F. App'x 482, 482-83 (8th Cir. 2008). Thus, there is no substantial burden on Plaintiff's ability to practice his religion and Plaintiff's claims must be dismissed.

(ECF No. 22 at 3).

10

The defendants further assert that the plaintiff has mistakenly suggested that the defendants have the burden to prove that the Religious Special Diet in place at MOCC is Halal and does not violate the plaintiff's rights.  Their Reply states:

> Plaintiff next asserts that Defendant Rider must factually prove that the vegetarian Religious Special Diet offered in accordance with Policy 511 is Halal, which is incorrect.  Policy 511 both referenced and attached to the Plaintiff's Complaint establishes that the Religious Special Diet offered does not violate Halal dietary restrictions.  It expressly states that the Religious Special Diet offerings will be purchased from a Food Service Vendor with appropriate Kosher and/or Halal certifications and the product label shall display that it is certified Kosher and Halal.  The policy further provides that meal preparation and service shall be carried out in a specific way to avoid contamination.  Thus, the policy, which must be the basis for Plaintiff's claimed violation of rights, on its face, demonstrates that there is no substantial burden on Plaintiff's ability to practice Islam.

(*Id.* at 4).

The defendants further contend that the Muslim faith's dietary tenets are restrictions, not requirements.  Thus, they contend that the plaintiff is simply restricted from eating pork and is not required to eat non-pork meat.  (*Id.* at 5).  Therefore, the defendants maintain that, as supported by the authority they have previously cited, the plaintiff is not required to violate the tenets of his faith by eating the vegetarian diet provided through the Religious Special Diet at MOCC and, therefore, his religious exercise is not substantially burdened.  (*Id.* at 4-5).  *See also, Malik v. Sabree*, No. 8:06-cv-319-RBH, 2007 U.S. Dist. LEXIS, 2007 WL 781640, at *4 (D.S.C. Mar. 13, 2007) (finding that a Muslim prisoner could practice his faith without Halal products and had not shown that his religious exercise was substantially burdened); *Watts v. Byars,* No. 6:12-cv-1867-JFA-KFM, 2013 U.S. Dist. LEXIS 125997, at *11-13 (D.S.C. June 10, 2013), *aff'd*, 551 F. App'x 77 (4th Cir. Jan. 24, 2014) (same).  (*Id.* at 5).

The undersigned finds this authority to be persuasive. Thus, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has failed to establish that the Religious Special Diet at MOCC has substantially burdened the exercise of his religion.

Additionally, the plaintiff suggests that the prison's diet policy during the Holy Month of Ramadan also violates his religious rights. However, he fails to specifically address how the Ramadan policy allegedly violates his religious rights. Rather, his Complaint simply states, in a conclusory manner, that the actions of the defendants in denying him proper food during the Holy Month of Ramadan violates both his First Amendment rights and RLUIPA. (ECF No. 2 at 17). The Ramadan policy is not specifically addressed by the parties again until the defendants' Reply brief, which states in pertinent part:

> During Ramadan, Muslims fast from sun-up to sun-down. The Ramadan Policy, attached as Exhibit 2 to Plaintiff's Complaint, provides breakfast and a bagged lunch with the dinner tray. *See Plaintiff's Complaint,* Exhibit 2. The inmates may eat the bagged lunch whenever they wish. Plaintiff has not alleged anything to prove that he suffered more than an "inconvenience" or that he was forced to abandon "one of the precepts of his religion" by the Ramadan policy. *Id.* Instead, the Ramadan policy permits Plaintiff to fast for Ramadan as he wishes and he may eat the food provided to him when he deems appropriate in accordance with his religious beliefs. Thus, there is no validity to any argument that Defendant Rider "intentionally and without sufficient justification" denied Plaintiff a diet that complies with Ramadan's requirements. *Lovelace v. Lee*, 472 F.3d 174, 2006 U.S. App. LEXIS 32051.

(ECF No. 22 at 9).

For the reasons stated herein, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has not established that MOCC's Religious Special Diet or the Ramadan Policy pose a substantial burden on the exercise of his religious beliefs and,

thus, his Complaint fails to state a plausible claim for relief under RLUIPA concerning his diet claims.

<u>First Amendment claim</u>

When a plaintiff fails to demonstrate a substantial burden on the exercise of his religious beliefs under the strict scrutiny required by RLUIPA, such a claim also fails under the Free Exercise Clause of the First Amendment. *See Blake v. Rubenstein*, No. 2:08-cv-00906, 2016 WL 5660355, at *26 (Apr. 4, 2016) (citing *Shabazz v. Johnson*, 2015 WL 4068590 (E.D. Va. July 2, 2015) ("[w]here an inmate has not put forth sufficient evidence under RLUIPA to demonstrate a substantial burden on his religious exercise, his claim fails under the Free Exercise Clause of the First Amendment as well.") (other citations omitted). Thus, in light of the above findings concerning the failure of the plaintiff's RLUIPA, the undersigned further proposes that the presiding District Judge **FIND** that the plaintiff's First Amendment Free Exercise Clause claims concerning his religious diet also fail to state a plausible claim for relief and should be dismissed.

## 2. *The plaintiff's claims concerning his kufi*.

The plaintiff further asserts that his rights under RLUIPA and the First Amendment Free Exercise Clause have been violated by the fact that his request to wear his kufi at all times in the prison has been denied by defendants Ballard and Rubenstein.[5] The defendants' Motion to Dismiss asserts that the plaintiff failed to exhaust the available administrative remedies concerning this claim.

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), was enacted "to address concerns about the 'ever-growing number of prison-

---

[5] This claim is not directed at defendant Rider.

condition lawsuits that were threatening to overwhelm the capacity of the federal judiciary.'" *Green v. Young*, 454 F.3d 405, 406 (4th Cir. 2006) (quoting *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 676 (4th Cir. 2005)). "The PLRA imposes some rather substantial limitations on a prisoner's ability to initiate a civil action." *Id.* One such limitation is the requirement that prisoners exhaust administrative remedies within the prison before filing a civil action." *Id.*

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In *Booth v. Churner*, 532 U.S. 731 (2001), the Supreme Court of the United States held that exhaustion of administrative remedies is mandatory, regardless of the type of relief sought or offered through the administrative procedures. *Id.* at 741. In *Booth*, the Court required exhaustion even where the grievance process does not permit the award of money damages, and the prisoner seeks only money damages, as long as the grievance tribunal has authority to take some responsive action. *Id.*

"Not only must a prisoner exhaust his administrative remedies, but he must also do so properly." *Wells v. Parkersburg Work Release Ctr. et al.*, No. 2:15-cv-04103, 2016 WL 696680, at *3 (S.D. W. Va. Jan. 19, 2016). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative

system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)).

Like the PLRA, the West Virginia Prison Litigation Reform Act ("WVPLRA") "require[s] inmates to exhaust their administrative remedies before they bring a lawsuit." *Legg v. Adkins*, No. 2:16-cv-01371, 2017 WL 722604, at *2 (S.D. W. Va. 2017) (citing 42 U.S.C. § 1997e(a); W. Va. Code § 25-1A-2a(i)). Under the WVPLRA, "[a]n inmate may not bring a civil action regarding an ordinary administrative remedy until the procedures promulgated by the agency have been exhausted." W. Va. Code § 25-1A-2(c). The WVPLRA defines an ordinary administrative remedy as "a formal administrative process by which an inmate submits a grievance seeking redress or presenting concerns regarding any general or particular aspect of prison life . . . . An ordinary administrative remedy includes, but is not limited to, . . . staff treatment or some other alleged wrong." *Id.* § 25-1A-2(a). Under the WVPLRA,

> An ordinary administrative remedy is considered exhausted when the inmate's grievance complies with duly promulgated rules and regulations regarding inmate grievance procedures, has been accepted, fully appealed and has received a final decision from the Commissioner of Corrections or the Commissioner's designee, or the Executive Director of the Regional Jail Authority, or the Director's designee.

W. Va. Code § 25-1A-2(d).

While "failure to exhaust available administrative remedies is an affirmative defense," it is a threshold issue that must be resolved before reaching the merits of the underlying claims for relief. *Jones*, 549 U.S. at 216; *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). If a plaintiff fails to exhaust his or her administrative remedies under the PLRA or WVPLRA, then the defendant is entitled to judgment as a matter of law. *See*

*Legg*, No. 2:16-cv-01371, 2017 WL 72604, at *2. Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." *Creel v. Hudson*, No. 2:14-cv-10648, 2017 WL 4004579, at *3 (S.D. W. Va. 2017) (citing *Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010)).

In the instant matter, the defendants' Memorandum of Law asserts:

> Here, the Plaintiff did not properly grieve his kufi claim before filing suit and, thus, this claim must be dismissed. *Anderson v. XYZ Correctional Health Services*, 407 F.3d 674, 683 (4th Cir. 2005). Plaintiff first sent an informal request to the Warden where he requested permission to wear his Kufi. *See Compl.*, at pp.14. The Warden denied it. *See Compl.*, at pp.14. Then, he filed a grievance which denied by the Commissioner for having more than 1 grievance in the envelope. *See Compl.*, at pp. 14. He then submitted a third grievance, but it does not appear that the Commissioner took any action on it. *See Compl.* at pp. 3. The form does not indicate that the Plaintiff appealed. *See Compl.* at pp. 43. Plaintiff asserts he sent a letter regarding the status of the same, but he did not receive a reply. These grievances combined are not sufficient for Plaintiff to meet his burden to exhaust administrative remedies before filing suit. Plaintiff is required to use all steps that the agency holds out[] and do[] so properly. *Corey v. Daniels*, 626 Fed. Appx. 414, 415, 2015 U.S. App. LEXIS 17522, *1. Even though Plaintiff sent the Warden a letter requesting the status of his last grievance, he has not established that he fully exhausted his administrative remedies. Therefore, his claim must be dismissed. [*Anderson*, 407 F.3d at 683].

(ECF No. 20 at 14-15).

The plaintiff's Response to the Motion to Dismiss asserts that he did fully exhaust the three-step grievance process concerning this claim. His Response states:

> Step One was answered by the Unit Manager. Step Two was answered by the Warden. When the Warden responded he included a photocopy of the original grievance with the original. Mr. Hatcher then initialed the original grievance that he is appealing and mailed it to the WVDOC Commissioner, keeping the copy for his records.
>
> The Commissioner did not respond to grievance 16-MOCC-PA-127 (Ex. 11). He sent a letter to the Warden inquiring about the unanswered grievance (Ex. 12). The warden incorrectly claimed it was signed by another inmate. Mr. Hatcher followed up with a second letter (Ex. 13). Mr. Hatcher

then sent a letter to the Commissioner (Ex. 14).  The Commissioner also failed to reply to exhibit 14.

Due to the fact that the Commissioner failed to reply to Mr. Hatcher's appeal, as well as Mr. Hatcher's attempt to resolve the issue of the unanswered grievance through the Warden's office and the Commissioner proves Mr. Hatcher did appeal to the Commissioner and the Commissioner did not reply to the grievance appeal.  As such, the administrative remedies related to the kufi have been fully exhausted.   The failure of the Commissioner to reply to Mr. Hatcher's appeal cannot be blamed on the Plaintiff.  The Commissioner did not make the final step available.

(ECF No. 21 at 8).  The defendants' Reply brief does not address this issue.

The copy of Grievance No. 16-MOCC-PA-127 (ECF No. 2, Attach. 1, Ex. 11), upon which the plaintiff relies to assert that he exhausted the prison administrative remedies concerning his kufi claim, does not indicate that it was appealed to the Commissioner. Moreover, notwithstanding the additional correspondence offered by the plaintiff to demonstrate his efforts to obtain a response thereto from the Commissioner, Grievance No. 16-MOCC-PA-127 could not have properly exhausted the plaintiff's administrative remedies because it was procedurally rejected at the Warden's level for raising a claim that had already been addressed in a previous grievance.  (*Id.*)

Policy Directive 335.00, which governs the Inmate Grievance Procedures, and which has been made a part of the record herein,[6] specifically provides:

"Exhaustion" shall mean submitting an accepted grievance and properly appealing an accepted grievance fully and receiving a final response thereto by the Commissioner.  Rejections do not constitute exhaustion.  Remands are not final responses unless expressly stated in the decision.

---

[6] As ordered by the undersigned, the defendants filed a copy of the version of Policy Directive 335.00 that was in effect when the plaintiff filed the subject grievances.  If the court relies on materials outside of the pleadings, the court may treat a motion to dismiss as one for summary judgment pursuant to Rule 56.  *See Jeffers v. Wal-Mart Stores, Inc.*, 84 F. Supp.2d 775, 777 (S.D. W. Va. 2000).

(ECF No. 37, Ex. 1 at 1, § III, ¶ 4) (emphasis added).  The Policy Directive further provides that "[i]f a grievance has not been properly submitted through any level by an inmate, it shall be rejected" and "reject" means "a refusal to review a grievance on the merits due to a failure of the inmate to follow the procedural requirements for filing such grievance." (*Id.* at 2, § III, ¶; *Id.* at 9, § V, D, ¶ 4).  The Policy Directive further provides that "[a]ny inmate who fails to fully and properly comply with the provisions set forth in this Policy Directive shall not be considered to have taken full advantage of administrative remedies afforded him/her and therefor has not exhausted administrative remedies."  (*Id.* at 5, § V, A, ¶ 5).

There are two reasons that the district court may find that the plaintiff failed to properly exhaust his administrative remedies concerning his kufi claims.  First, with respect to Grievance No. 16-MOCC-ST-129 (his first grievance related to his kufi) (ECF No. 2, Attach. 1, Ex. 10), when that grievance appeal was rejected by the Commissioner, on or about September 30, 2016, for placing more than one grievance appeal in one envelope, the grievance procedures provided that the plaintiff could properly resubmit the appeal to the Commissioner within five days.  (ECF No. 37, Ex. 1 at 8-9, § V, D, ¶¶ 1, 3).  Rather than complying with that requirement of the grievance process, the plaintiff essentially re-filed the same grievance when he filed Grievance No. 16-MOCC-PA-127 to his Unit Manager on October 17, 2016.  (*Id.*, Ex. 11).  Thus, the plaintiff had already failed to properly comply with the grievance procedures because he failed to resubmit Grievance No. 16-MOCC-ST-129 directly to the Commissioner within five days of its rejection.

Furthermore, when Grievance No. 16-MOCC-PA-127 was reviewed at the Warden's level, it was rejected because it was re-addressing an issue that had been previously addressed at that level in the prior grievance.  Accordingly, such rejection failed to exhaust

that level of the grievance process.  Therefore, the plaintiff could not appeal the merits of that grievance to the Commissioner and that grievance also could not have exhausted the available administrative remedies under the Policy Directive.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff failed to properly exhaust the available administrative remedies concerning his claims that the denial of the right to wear his kufi at all times in the prison posed a substantial burden on his religious exercise.  Thus, the plaintiff's RLUIPA and First Amendment claims based on the denial of the ability to wear his kufi at all times in the prison must be dismissed under 42 U.S.C. § 1997e(a) and W. Va. Code § 25-1A-2(c).[7]

### B.    The plaintiff's Establishment Clause and Equal Protection Claims.

The plaintiff's Complaint further alleges that the defendants, by "intentionally giving official sanction and sponsorship to the 'Brahman Diet' and the Hare Krishna religion, while intentionally and without justification, denying Plaintiff a religiously mandated Halal meat diet consistent with his religious scruples, violated and continues to violate, the Establishment Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.  (ECF No. 2 at 18).  The defendants' initial Motion to Dismiss did not address these claims.

The plaintiff's Response further contends that he is "not allowed to order Halal food from outside Halal food vendors, while inmates of other religions are allowed to do so."  (ECF No. 21 at 9).  He further asserts that "[p]rison officials are obligated to treat

---

[7]  The undersigned notes that the same analysis would likely apply with respect to the plaintiff's grievances concerning all of his religious diet issues, as the first set of grievances concerning those claims were also rejected by Commissioner for placing more than one grievance in an envelope, and then the second set of grievances on those issues were thereafter rejected by the Warden as re-addressing claims that had already been addressed.  (ECF No. 2, Attach 1, Exs. 4-7).  However, the defendants did not assert that the plaintiff failed to exhaust his religious diet claims in their Motion to Dismiss.

religions in an even-handed manner." (*Id.*, citing *Cruz v. Beto*, 405 U.S. 319, 322 (1972) and *Lindell v. Casperson*, 360 F. Supp.2d 932, 958 (W.D. Wisc. 2005) ("The denial of a privilege to adherents of one religion while granting it to others is discrimination on the basis of religion in violation of the equal protection clause of the Constitution.")). Thus, the plaintiff asserts that this practice, too, violates his right to equal protection. (*Id.*)

Concerning his Establishment Clause claim, the plaintiff's Response states in pertinent part:

> Establishment Clause standards differ from Free Exercise Clause standards in important respects, for example, several courts have held that the Turner/O'Lone reasonable relationship standard does not govern Establishment Clause cases. *Ross v. Keelings*, 2 F. Supp. 2d 810, 818 (E.D. Va. 1998); *Scarpino v. Grosshiem*, 852 F. Supp. 798, 804 (S.D. Iowa 1994).

> The Supreme Court has held that in Establishment Clause cases, courts should inquire whether the challenged law or conduct has a "secular purpose," whether "its principal or primary effect . . . advances or inhibits religion" and whether it creates an "excessive entanglement of government with religion." *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971). Refusing to provide a Halal meat diet or at least a pork substitute to Mr. Hatcher, including during Ramadan while promoting and sanctioning the Brahman diet and the strict dietary requirements of the Hare Krishna advances the Hare Krishna religion while inhibiting the plaintiff's Muslim religion and diet. This is essentially coercion. The Establishment Clause prevents government from coercing anyone to support or participate in religious exercise. *See Alexander v. Schenk*, 118 F. Supp.2d 298, 301 (N.D.N.Y. 2000).

> P.D. 511.00, Attachment 1 (Comp. Ex. 1) clearly outlines the Brahman diet. "This diet is familiar to many Americans as that promoted by the Hare Krishna community and it is the diet members of the Brahman caste are expected to adhere to in India and elsewhere." *Id.*

> The WVDOC is literally coercing Mr. Hatcher to either eat pork or eat, not a Halal vegetarian diet, but the strict diet of the Hare Krishna. *Lee v. Weisman*, 505 U.S. 577, 587 (1992); *see Kerr v. Farrey*, 95 F.3d 472, 479 (7th Cir. 1996) (When a plaintiff alleges coercion, "three points are crucial: first, has the state acted; second, does the action amount to coercion; and third, is the object of the coercion religious or secular"). Mr. Hatcher presents he has met this standard of proof.

20

(ECF No. 21 at 9-10).

The defendants did address these claims in their Reply. First, the defendants note that "[t]o survive an Establishment Clause challenge, a law must reflect a clearly secular purpose, have a primary effect that neither advances nor inhibits religion, and avoid excessive government entanglement with religion." *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971). (ECF No. 22 at 6). The Reply further contends:

> Policy 511, which is identified as the basis for Plaintiff's dietary claims, does not on its face favor one religion over another or treat the followers of any religion different than the followers of any other. It does not provide special accommodation to one religion over another. Members of every faith were accounted for in the Religious Special Diet provided in accordance with Policy 511. It describes kosher, halal, and the Brahmin [sic; Brahman][8] diet requirements and then devises to provide a meal that falls within the restrictions of all of those diets. The Religious Special Diet called for in Policy 511 does not promote the [Brahman] Diet. It promotes the Religious Special Diet, which complies with all religions. While the Religious Special Diet may be more closely aligned with the [Brahman] diet, that is nothing more than a function of the [Brahman] diet being the most restrictive of the three. Defendant Rider agrees with Plaintiff's assertion that Policy 511 outlines the [Brahman] diet. However, Policy 511 also outlines the dietary restrictions of a Kosher and a Halal diet, and then *expressly* states that the WVDOC will provide one Religious Special Diet that complies with all 3 religions' diet restrictions. Policy 511 thereby has an evidence secular purpose, avoids advancing or inhibiting any religion, and avoids the WVDOC's involvement with any government entanglement with religion by providing a diet that aligns with all religions. *Id.* On its face, Policy 511 survives the *Lemon* test and, thereby, Plaintiff's claim does not have merit. *Id.*

(ECF No. 22 at 6-7). For these reasons, if the presiding District Judge does not dismiss these claims as being unexhausted, the undersigned proposes that the presiding District Judge **FIND** that the allegations in the plaintiff's Complaint are not sufficient to maintain a plausible claim for relief under the First Amendment Establishment Clause.

---

[8] "Brahmin" is a variant spelling of "Brahman," which is the spelling used in Policy Directive 511.00. The undersigned will use the spelling contained in the Policy Directive.

The Equal Protection Clause of the Fourteenth Amendment states in pertinent part, "nor shall any State . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In order to succeed on an equal protection claim, "a plaintiff must first demonstrate that he has been treated differently from others with whom he is <u>similarly situated</u> and that unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). [Emphasis added].

For similar reasons as stated above with respect to the plaintiff's Establishment Clause claim, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a plausible claim for relief under the Equal Protection Clause of the Fourteenth Amendment. The plaintiff has not sufficiently established that he and other Muslims are being treated differently from other prisoners who have requested a Religious Special Diet.

## <u>RECOMMENDATION</u>

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the defendants' Motions to Dismiss (ECF No. 19) and dismiss this matter from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the

date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

August 8, 2018

Dwane L. Tinsley
United States Magistrate Judge